Good morning, Your Honors. Ethan Forrest from Covington & Burling for the Appellant, Michael Hopkins. I'll note at the outset I'd like to reserve about three minutes for rebuttal, if I may. Okay, thank you. Mr. Hopkins is a California inmate. He is developmentally disabled, meaning that per the record, based on the assessments of his prison psychiatrists, he is functionally illiterate. And if we review the record as just a few examples in pages 44 through 47 of the excerpts of record, we can see that Mr. Hopkins' handwritten forms and appeals are written in myriad different handwritings, suggesting that he had other inmates complete his reading and writing tasks for him. Mr. Hopkins is also mentally ill. He has major depression, he has anxiety, and he has psychoses, which have caused him, per the record, to hear the voices of God and the devil, to experience suicidal ideation, and to be placed on suicide watch numerous times. Well, we know what his issues are, but I'm also looking at the adaptive support logs and other evidence, and the records show that he received DDP assistance virtually every day since the day he was enrolled in the DDP program. What does Hopkins present to refute this evidence? I guess, what more evidence should Hopkins have received under Clark and the ADA? Because it's really hard to imagine. I guess when I look at a case like this, you can always say you could have done more. You always could do more. But what's enough under Clark, what's enough under the ADA, and giving your client all inferences in his favor? What specifically are you saying that he didn't get and that the law clearly entitles him to it? Because he kind of did enjoy a fair amount of success, and it's not a situation where he didn't receive any assistance. That's right, Your Honor. It's not disputed that Mr. Hopkins received some assistance. Well, kind of a lot. Kind of a lot. But there are, on the record, several disputes of fact. He didn't get Paul Clement to represent him on appeal for free, but, you know, that being said, he got you. That's true, and maybe I'm no Paul Clement, but I can point to several examples in the record where the record shows that Mr. Hopkins was deprived of meaningful access to several guarantees under the Clark against California remedial plan. As one example, the California Secretary of Corrections is mandated under Clark to provide Mr. Hopkins with meaningful access to reading and writing. And yet, if you look at pages 44 through about 47.21 of the excerpt of record, there are several examples of Mr. Hopkins going to the prison library, asking for help, receiving some help, and then objecting saying he didn't receive enough or that it was inadequate and asking for supervisor review. And there's no evidence in the record that anyone actually went to Mr. Hopkins or to the library afterwards to figure out what happened. And as a much broader and, I think, more significant example of where there are material disputes in the record as to whether Mr. Hopkins received meaningful access to support under the Clark plan, if you look at excerpts of record 11 through 12, 27. But I guess what I'm saying is Mr. Hopkins didn't get everything that he wanted. And I'm not sure Mr. Hopkins can ever get everything that he wanted, but we have to look at the record that we have before us. And I think that you can say, and so we include that Mr. Hopkins didn't get that, that he didn't want something. But it's still, if you look at everything, we still have to show that, I mean, could at the end of that, is there any juror that would be convinced on the evidence that was presented and giving him all those inferences that he didn't get what he was entitled to under Clark and the ADA? I think so, Your Honor. And I'd like to point to one overarching example of this, which obtained throughout Mr. Hopkins' incarceration up to and after his being placed in the DDP. And that is the fact that in order to read and write, in order to participate in the prison grievance processes and then to represent himself in the court below, Mr. Hopkins had to bribe other inmates with food and with care packages from home and with money and with his prison canteen in order to obtain those basic necessities that the prison was supposed to provide to him. And this puts Mr. Hopkins at a unique risk throughout his incarceration, because as Judge Breyer found below in the case regarding the Clark against California settlement, inmates in the prison economy who have to rely on other inmates in order to read and write, as just a few examples, by providing their food and their money, are at a unique risk of abuse while in prison. And it is the prison's duty to inmates such as Mr. Hopkins, under the Clark against California remedial plan, to ensure that he doesn't have to do that, to ensure that Mr. Hopkins is able to read and write and present his case and to take his appeals without having to give up his own position. Well, how many cases did he have and how successful was he? It was kind of impressive. Didn't he have, like, 30 appeals? That's true according to the... And he got several to other levels, and he actually even exhausted some? That is absolutely right, Your Honor. But one of the critical points here, and I think the critical point for our purposes, is his ability to litigate his case against the secretary below in the district court in order to have it fairly heard by the court as to whether he really did obtain meaningful access to these Clark plans or not. And I think as to that dispute in particular, leaving aside the grievance processes that existed while he was incarcerated, we submit that it's undisputable that he didn't obtain meaningful access to the services that he needed in order to present his case to the court below. Can I ask a question on just fundamentally, as I read the complaint to the extent, it seemed like it was only constitutional claims. You've raised an argument on appeal that that should be interpreted as statutory claims. What is your basis for, I mean, first of all, does it matter? And second of all, what's your basis for saying that this constitutional avoidance theory should be applied broadly to reading of complaints, reading claims into a complaint that aren't there? Yes, Your Honor. I've got several answers to that. The first, as to whether the court should have avoided the constitutional question in the first place, despite the undisputed fact that the complaint asserts a claim under the due process clause, is in the Ninth Circuit's own Armstrong v. Davis, which directs the lower court to avoid constitutional questions if possible. And relatedly, in the Clark v. California case, which the lower court cited and which we've discussed repeatedly today, Judge Breyer did exactly that, because in the complaint that he was discussing, the inmates similarly asserted due process clauses. And they didn't assert statutory claims? No, Your Honor. Instead, Judge Breyer said specifically that claims as to due process under the Clark remedial plan are to be construed as statutory claims under the ADA and the Rehabilitation Act. And so those, I think, are the two authorities that should have directed the court below to avoid the constitutional question and to take it up as a statutory claim. And as to your question about whether it matters, we submit that it does, because the meaningful access standard is very different from the constitutional standard that the court created below, which asked Mr. Hopkins to show that he was the victim of atypical or significant hardship in prison life. And that is directly contrary to the fundamental point of Clark, which has to do with a class of inmates who have developmental disabilities whose conditions are necessarily typical. And so it held Mr. Hopkins to an artificially high standard and gave the government an artificially low standard when what the lower court should have done was to look at the record and ask if Mr. Hopkins had meaningful access to these services as opposed to whether he had any access at all. And, Your Honors, I recognize I'm out of time, but I want to be sure to answer your question. Okay. I'll give you two minutes for rebuttal. Okay. Thank you, Your Honor. Thank you. Good morning. Good morning, and may it please the Court. Michelle Desjardins for the Secretary of the Department of Corrections and Rehabilitation. First, this Court should affirm the decision of the District Court to grant summary judgment to the Secretary of the Department of Corrections and Rehabilitation because the undisputed evidence shows that Mr. Hopkins received reasonable accommodations for his developmental disability in accordance with the Clark remedial plan. It's kind of difficult to ascertain what complies with the Clark remedial plan, but Mr. Hopkins continues to assert that he has to pay other inmates to help him. Isn't that enough to support the reasonable inference that he's not receiving assistance as required by Clark and the ADA? Your Honor, I would say that the reasonable accommodations are very clearly outlined in the Clark remedial plan, and the fact that he is asking other inmates to act as jailhouse lawyers for him does not undermine that. Many inmates seek the assistance of jailhouse lawyers. They have for years. The U.S. Supreme Court has said that this is a manner in which inmates may access the courts. The Ninth Circuit has said as much. So the fact that he has done so throughout does not undermine the showing that he is receiving reasonable accommodations for his developmental disability. Is there a difference, though, between they may use that versus they're forced to do that because there's no other access? I don't think he's being forced to use that. The record, we submitted hundreds of pages. But the question is, is there a difference between being forced to or that you may? Does Clark require that you have to be forced to? I think that's what he's asking you. If he was being forced to use other inmates to help him because he wasn't getting his accommodations, would he then have raised a, you know, would he be entitled to a relief by this court? I would say that there was no forcing of him to use jailhouse lawyers. He was being provided. Well, but if he was forced to because he wasn't receiving other assistance, is that, do we have to reverse summary judgment? I don't think so, Your Honor. Well, how can that be? I think you could argue that. If you're not giving him anything and he's forced to use other people, why would you be entitled to summary judgment? Because it seems like Clark would not allow for that. But the prison officials are giving him help. Well, I know. That's what you're arguing. But the question was, if he was being forced, is that different than just because he chooses to use other inmates? Well, it has to be. You're not losing your case by admitting that. It has to be. If you were giving him nothing and he was being forced to use other inmates, why would you deserve to win? Well, I suppose if somebody was absolutely forcing him to use other inmates. You can concede something without losing. You have to be a little more nimble than that. I just don't think that we can find on the record here that he's being forced to do anything. He's being provided reasonable accommodations in accordance with the Clark remedial plan. He's not being forced to use inmates to write his grievances. He's got mental health staff. He's had mental health staff help him write complaints and grievances since before he was even placed in the developmental disability program. We see the record is replete with him going to his doctors, clinicians, and saying, I need help writing this. I don't like the way staff is treating me. Will you help me write this? Will you make a copy? Will you help me file it? So there is just nothing on the record showing he's forced to use jailhouse lawyers. There's nothing to show that he's being forced to give them his snack food to get them to assist with filing grievances. For you to prevail, you have to show on this record, we have to give all inferences to Mr. Hopkins, and so he says he used other people. Okay. So on this record, let's assume that he did use other people. That's true. How on this record is there no material disputes, material issues of fact that are being disputed? How can we be sure that even considering that he's saying that, that he got everything he's entitled to as a matter of law under Clark? Mr. Hopkins has the burden of showing a reasonable modification that he has not received. He has not done so. I have not heard once what this reasonable modification is that he's not getting under Clark. I would say that the Clark remedial plan dictates what accommodations are reasonable. All right. Of the undisputed facts in this record, what shows that you should win? He was receiving accommodations pursuant to the Clark remedial plan every single day. That was logged in hundreds of pages of these daily accommodation logs. We see on multiple occasions his asking for help, writing forms, writing court forms, writing grievances, writing letters to family members, understanding court forms, understanding transcripts. We have staff reading transcripts to him. We have staff helping him in the library to find legal materials, scribing, explaining. They are providing him with all the accommodations that are required under the Clark remedial plan. There is absolutely no accommodation that he has suggested under the Clark remedial, that is provided for under the Clark remedial plan that he has not received. So I think what your argument is that, all right, if that's undisputed, but he claims, I want this, I want that, and I didn't get this, I used other people. If you presume that to be true, I'm assuming what your argument is, even presuming that to be true, you look at everything here and no juror could find other than that he got all the accommodations. Your Honor said it much more articulate than I did. Yes, I would agree with that. Well, I can assume that you could never have a case where an inmate would have everything that they want or be happy with everything or like every result that they got. But on the other hand, I could also assume a case where if an inmate were forced to use other people to get what they needed because they weren't getting accommodations, then you've got a tribal issue and you go to a jury. So all of, you know, I'm trying to get my arms around all of these cases are probably, everyone can always probably say things, and so what's the appropriate case for summary judgment? So the appropriate case for summary judgment has to just return to what are reasonable accommodations under Clark and did he receive them? Relying on jailhouse lawyers is permitted. It's acceptable as an accommodation for inmates to access the courts. There are multiple times, probably 90% of the time we see inmates doing so. The inmate population is not always the most educated. There are often struggles with the English language. Jailhouse lawyers are a fact of life. They're protected under the First Amendment. The fact that Mr. Hopkins used them to assist him, it doesn't mean anything. It does not mean that he's not getting reasonable accommodations under the Clark remediation plan. So what does the record show about how many appeals he filed, what his success rate was, all of that? What is undisputed in the record on that point? Well, the district court found over 30 health care appeals. He filed over 30 health care appeals. He was able to take at least half of them, or a little bit less than half of them rather, all the way up to the final level of appeal, meaning he exhausted them. And the record actually shows many, many other inmate appeals that he was able to file, including the appeal of the issues underlying this very lawsuit. And if you look at his own exhibits, it shows that he's filed numerous other inmate appeals, even beyond these health care appeals. So he has not been denied access to the courts or the ability to file inmate grievances throughout. And I see my time is up. Do either of my colleagues have any questions? Apparently we don't have any additional questions. Thank you. Thank you, Your Honor. Thank you, Your Honors. I just have two quick points. One is that the state is asking this court to commit the same error that the lower court did in repeatedly referring to whether Mr. Hopkins had reasonable accommodations under Clark. That's not the standard. The standard is whether he had meaningful access to the specific types of help he was supposed to get under Clark. The second point I wanted to make is concerning the state submission that, on the record that's before the court right now, Mr. Hopkins got everything he was supposed to get. Leaving aside the question of the standard, that's just not true. And, again, I want to return to the fact that, as Judge Breyer specifically laid out in a roadmap in Clark v. California as to what is meaningful access under the remedial plan and what isn't, it is never meaningful access to the assistance under the remedial plan when inmates such as Mr. Hopkins are forced to make themselves vulnerable and open to manipulation by giving up their food and giving up their money to other inmates. This is not. What's your evidence or is there evidence that he was forced to do that as opposed to, I mean it sounds like this is something that is commonly done and probably rightfully so. It's easier. Clearly it's going to be easier to go talk to another inmate than seek outside counsel in some way. So what's the evidence that he's being forced to do that? The evidence, Your Honor, has to do with Mr. Hopkins' condition. Unlike many and maybe most of the inmates in California's prison population, Mr. Hopkins is developmentally disabled and mentally ill. And so for inmates such as him, per Judge Breyer again in Clark v. California, it is a form of abuse and manipulation and being forced into some course of action when inmates like these put themselves at risk as opposed to other inmates by giving up their food and their money because inmates with developmental disabilities and mental illnesses such as the kind Mr. Hopkins has are uniquely vulnerable to that type of inmate. But it strikes me, if I accept what you're saying, that someone could have help every single day, they could get everything, and then they could just go and ask another inmate to help them and say, I'll give you my snacks for that, and you've created, you've defeated summary judgment. That can't be right. I think that if an inmate is developmentally disabled and mentally ill as Mr. Hopkins is and shows a clear and consistent record throughout his time of incarceration, although I think even one of the But isn't everyone on the DDP have some issues? They don't get there by not having some issues, right? That's true, and there is a gradation in terms of the care that is due to inmates in the DDP. And Mr. Hopkins is a DD2, which means that he is just one step away from the most severe categorization. And so I think looking at the level of it seems to me that you need to show not just that he's doing this, but that he has a history of asking to receive assistance, and that's being denied him and thus forcing him to do that. And I guess my question is, is that in the record here? Yes, Your Honor. I think if you look at the examples of Mr. Hopkins going to the library, asking for help, saying that he didn't get what he needed, and also repeatedly telling prison staff and writing in his own declaration. But there's evidence that he did get help in many other circumstances, right? There is, but we would submit that that doesn't meet the standard of having meaningful access to these accommodations throughout his incarceration while in the DDP program. And at time, Your Honor. Okay, thank you both for your argument in this matter. It will stand submitted.
judges: Callahan, Owens, Nelson